**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GEREHIWOT G. GEBRIYE,

Petitioner,

vs.

TODD BLANCHE, *et al.*,[1]

Respondents.

Case No.: 2:26-cv-00826-GMN-EJY

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Gerehiwot Gebriye's First Amended Petition for Writ of Habeas Corpus, (ECF No. 14). Federal Respondents Todd Blanche, Markwayne Mullin, Todd Lyons, and Michael Bernacke filed a Motion to Dismiss the First Amended Petition, (ECF No. 15). Petitioner filed a Response, (ECF No. 16), to which Federal Respondents filed a Reply, (ECF No. 18).

For the reasons discussed below, the Court GRANTS the First Amended Petition and orders a bond hearing.

## I. BACKGROUND

Petitioner Gerehiwot Gebriye is a native of Eritrea who entered the United States in December 2015 after fleeing his country. (First Am. Pet. 4:4–5, ECF No. 14). Petitioner was given lawful permanent resident status upon his entry. (*Id.* 4:5–6). On April 12, 2023, Petitioner was convicted of forcible sexual abuse in Farmington, Utah, and was sentenced to a term of one to fifteen years in prison. (*Id.* 4:6–7). After spending five months in jail, Petitioner was placed on probation. (*Id.* 4:7–8). After three and a half months on probation, on October

[1] Pursuant to Federal Rule of Civil Procedure 25(d), U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for currently named Kristi Noem.

17, 2025, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") and placed into custody. (*Id.* 4:8–10). Despite being detained for almost a full year, Petitioner has not received a bond hearing. (*Id.* 4:11–12). On January 22, 2026, an immigration judge denied Petitioner's asylum claim but granted withholding of removal. (Resp.'s Exs. at 37, ECF No. 21). Petitioner thereafter appealed that decision to the Board of Immigration Appeals ("BIA"), which remains pending.[2] Petitioner remains detained in NSDC in Pahrump, Nevada. (First Am. Pet. 3:9–10).

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C.A. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner contends that his prolonged detention without an individualized custody determination violates his due process rights under the Fifth Amendment. (First Am. Pet. 4:22–8:4). In their Motion to Dismiss, Federal Respondents argue that Petitioner is subject to

[2] The Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

mandatory detention under 8 U.S.C. § 1226(c)(1)(C) and thus is not entitled to a bond hearing. (Mot. Dismiss 2:8–19, ECF No. 15). In his Response, Petitioner avers that even if he is subject to mandatory detention under that statute, his prolonged detention without a bond hearing nonetheless violates the constitution.

**A. Legal Basis for Detention**

As explained above, Federal Respondents contend that Petitioner is subject to mandatory detention under § 1226(c)(1)(C), which Petitioner does not dispute. (Mot. Dismiss 2:8–19); (Resp. to Mot. Dismiss 2:4–7, ECF No. 17). Section 1226(c)(1)(C) subjects noncitizens who are deportable under 8 U.S.C. § 1227(a)(2)(A)(i) on the basis of an offense for which the noncitizen has been sentenced to a term of imprisonment of at least one year to mandatory detention. 8 U.S.C. § 1226(c)(1)(C). Here, Petitioner was convicted of the offense of forcible sexual abuse and sentenced to a term of imprisonment of one to fifteen years in prison. (First Am. Pet. 4:6–7). Further, the Notice to Appear served on Petitioner notes that he was charged as deportable under § 1227(a)(2)(A)(i). (*See* Resp.'s Exs. at 1). Accordingly, the Court concludes that Petitioner is subject to mandatory detention under § 1226(c)(1)(C).

However, the core dispute in this case is not the government's authority to detain Petitioner, but whether Petitioner's detention for nearly a year without a bond hearing runs afoul of the due process clause. Respondents reject that claim outright, relying primarily on the Supreme Court's decision in *Demore*, where the Court held that the detention of a noncitizen for removal proceedings under § 1226(c) does not violate the due process clause. (Mot. Dismiss 2:14–20) (citing *Demore*, 583 U.S. at 513). There, the Court held that "the Government may constitutionally detain deportable [noncitizens] during the *limited* period necessary for their removal proceedings." 583 U.S. at 518-21, 526 (emphasis added). In so holding, the Court stressed the "brief" nature of mandatory detention under § 1226(c), which has "a definite termination point" that, in the majority of cases, resulted in detention of less than ninety days,

and in the vast majority, less than about five months. *Id*. at 529-30. Justice Kennedy, who provided the fifth vote, concurred separately to state that a noncitizen could still be constitutionally entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id*. at 532.

Following *Demore*, the Ninth Circuit has continued to express "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Indeed, several courts in this District have concluded that prolonged detention under § 1226(c) without a bond hearing violates the due process clause. *See, e.g.*, *Morales v. Mullin*, No. 2:26-cv-00737-ART-BNW, 2026 WL 1623189, at *3–5 (D. Nev. June 5, 2026); *Osorio v. Blanche*, No. 2:26-cv-00588-GMN-MDC, 2026 WL 1481555, at *3–7 (D. Nev. May 27, 2026). The Court thus analyzes whether Petitioner's detention under § 1226(c)(1)(C) for over ten months without a bond hearing is unconstitutional as applied to him.

**B. Due Process**

Under the Fifth Amendment, "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that

would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

As an initial matter, the Court finds that a petitioner may bring an as-applied constitutional challenge to the application of § 1226(c). *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute ...."). To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[3] Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Court addresses each factor in turn.

///

///

[3] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

**1. Private Interest**

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial."). Further, when assessing the strength of that interest, length of detention is "the most important factor." *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)). Petitioner has been detained without a bond hearing for over ten months, which is sufficiently long to establish a strong liberty interest. *See Rodriguez Diaz*, 53 F.4th at 1207 (referring to detention exceeding six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them"); *Lazaro v. Warden*, No. 1:26-cv-00060-DC-SCR, 2026 WL 1021063, at *3–4 (E.D. Cal. Apr. 15, 2026) (granting bond after 8 months).

**2. Risk of Erroneous Deprivation**

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation is high because there is no evidence that Petitioner has been afforded any hearing, either pre- or post-detention. First, the parties agree that Petitioner has not received a bond hearing. (First Am. Pet. 4:11–12); (Reply 1:17–18, ECF No. 18). Second, there is no evidence that Petitioner was afforded an initial custody determination at the outset of his detention. (First Am. Pet. 6:14–16). Notably, Respondents did not produce a Form I-286 Notice of Initial Custody Determination despite being ordered to do so. (*See* Minute Order, ECF No. 19); (*see generally*

Resp.'s Exs.). "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011).

Further, in the absence of any meaningful procedural safeguards, "almost any additional procedural safeguards at some point in the detention would add value." *Lazaro*, 2026 WL 1021063, at *4 (quoting *Black v. Decker*, 103 F.4th 133, 153 (2d Cir. 2024) (internal quotation marks omitted); *see Jimenez v. Wolf*, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)). Finally, there is no evidence that "*any* procedure is currently available for Petitioner to challenge the lawfulness of his detention under § 1226(c)." *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025). The Court thus concludes that the second *Mathews* factor also weighs heavily in favor of Petitioner.

**3. Government's Interest**

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C.*, 2025 WL 2916264, at *11; *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of

immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

Accordingly, because all three *Mathews* factors weigh in favor of Petitioner, the Court finds that Petitioner's detention under § 1226(c) without a bond hearing violates his due process rights.

**C. Remedy**

Based on the above analysis, Petitioner has been unlawfully detained without a bond hearing for over ten months. Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," the Court orders Respondents to provide a constitutionally adequate bond hearing within seven days or immediately release him from custody on his own recognizance with no substantial constraints on his liberty. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (internal quotation marks and citations omitted). At the bond hearing, the government will bear the burden of proving by clear and convincing evidence that Petitioner poses a danger or flight risk. *See Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (ordering the government to provide a post-deprivation bond hearing, where the government bears the burden of proof, to § 1226(c) detainee); *Osorio*, 2026 WL 1481555, at *6–7 (same); *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (same); *Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) (same).

///

///

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus, (ECF No. 14), is **GRANTED**.

**IT IS FURTHER ORDERED** that Federal Respondents' Motion to Dismiss, (ECF No. 15), is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence no later than **August 28, 2026**.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention. Due to the difficulties other petitioners have faced in attempting to satisfy bond through ICE payment portals, **IT IS FURTHER ORDERED** that Petitioner must be afforded until **September 11, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **August 28, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance. Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that the Parties must file a joint status report by **August 31, 2026**, that details whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted or the bond hearing has not occurred, the status report must confirm the date and time of Petitioner's release from detention in compliance with this Order. If bond is denied, Federal Respondents must (1) attach that

order of the immigration court to the joint status report, and (2) provide the contemporaneous record of the bond hearing to Petitioner's counsel immediately upon request.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem. The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is further directed to enter judgment in favor of Petitioner.

**DATED** this 21 day of August, 2026.

Gloria M. Navarro, District Judge
United States District Court